ORENDORFF and others *vs.* STEELE.

It was not the intention of the parties to *Petrie's patent* of lands lying in the valley of the Mohawk river, that any island should be included within the boundaries of any of the lots granted by it, unless specially so mentioned in the patent.

It was the intention of the government, in issuing the patent to *Petrie* and others, to give to each patentee 100 acres of land, and no more. And the conveyance of islands, and parts of islands, in the Mohawk river, to make up the complement of 100 acres in each lot, whether the islands were situated opposite to the lots to which they were annexed, or not, affords conclusive evidence that the principle of riparian ownership was not intended to apply to any of the patentees.

Where, in a patent granted by the state, the land was described as running "North 23° east to the river, and thence *down along the said river*," &c. *Held*, that in the absence of any circumstances to control the construction, and to show the actual intention of the parties to be otherwise, this description would afford presumptive evidence of a design to carry the north line of the lot to the middle of the river. But that it was only presumptive evidence, which was liable to be overcome by evidence of a different intent.

THIS was an action of ejectment for premises described in the declaration as "lot No. 39, in a patent of lands granted to John Jost Petrie and others, bounded on the north by the Mohawk river, east by lot No. 40 in said patent, being the same lot of land formerly owned by Hendrick Orendorff."

In opening the cause to the jury, the counsel of the plaintiffs stated that he sought to recover possession of an island in the Mohawk river, opposite to lot 39, as a part of the lot, on the ground that the north line of the said lot extended to the thread of the stream, and would thus embrace the premises in question.

Orendorff *v.* Steele.

Upon the argument, it was not disputed that the plaintiffs were the owners of lot 39; deriving title by descent, or otherwise, from Hendrick Orendorff, the original patentee of the lot; but it was denied that lot 39 embraced the island in question. In the course of the trial, a patent was given in evidence, bearing date October 6th, 1741, conveying to Peter Winne, among other things, " all the small islands lying in the Mohawk river between the mouth of West Canada creek and the head of the great falls in the Mohawk river at Little Falls ;" which description it was admitted by the plaintiffs' counsel embraced the island in controversy. It was, however, argued that the government having, before the issuing of this patent, conveyed this island as a part of lot 39, upon the principle of riparian owner ship, to Hendrick Orendorff, it could not thereafter convey it to another. The circuit judge decided that the plaintiffs were entitled to recover that part of the island lying opposite to the lot No. 39, and directed the jury to find a verdict accordingly. The defendant's counsel excepted to this decision, and the jury rendered a verdict for the plaintiffs. A bill of exceptions having been filed, the defendant now moved for a new trial.

*F. Kernan,* for the plaintiffs.

*L. Ford,* for the defendant.

*By the Court,* GRIDLEY, J. The important question for our decision in this case is, whether the island passed under the description, and as a part of lot 39, of Petrie's patent. Passing over the proposition that the Mohawk river has been made an exception to the general doctrine of riparian ownership by the action of the government asserting a right to the bed of the stream by grants and acts of legislation for more than a century past, which proposition has been supposed by some to have been established by the court for the correction of errors in *The Canal Appraisers* v. *The People,* (17 *Wend.* 572,) we are nevertheless of the opinion that it was not the intention of the parties to the patent, under which the plaintiffs claim, that any

island should be included within the boundaries of any of the lots granted by it, unless specially so mentioned in the patent. The patent under which the plaintiffs claim, was granted on the 30th day of April, 1725, and conveyed to each individual patentee 100 acres, by a particular description. The description of lot No. 39 is in the following words, viz : "Beginning at the northeast corner of lot No. 40 by the river, and running thence south 23° west 148 chains; thence north 67° west 6 chains 80 links; thence north 23° east to the river, and thence *down along the said river* to the place where said lot 39 began, containing 100 acres of low and wood land." This description *"down along the river,"* would undoubtedly, in the absence of any circumstances to control the construction of the grant, and to show the actual intention of the parties to the contract to be otherwise, carry the north line of the lot to the middle of the river. But it appears on the face of the patent, that the colonial governor, in issuing this patent, pursuant to his instructions, acted under the direction of the council, which allowed only 100 acres to be patented to each German emigrant, to be allotted and granted in severalty. It appears that in following the direction of giving to each patentee 100 acres, and no more, the patent, in several instances, granted islands or parts of islands to make up the complement of 100 acres. For instance, lot 28 was granted to John Adam Storing, and three-fourths of an island opposite to lot 27 was included in the description of this lot to make up the 100 acres. Lot No. 27 was patented to Leonard Bess, together with one-fourth of the island opposite thereto, to make up the complement of 100 acres. Lot No. 29 was granted to Elizabeth Herkimer, consisting of 70 acres of main land, and Herkimer island, containing 30 acres, to make up the whole amount of 100 acres. We are to look at the whole patent to enable us to give a just interpretation to any given part of it; and we cannot but see that it was the leading object and intent of the parties to convey to each patentee 100 acres, and no more. And it is equally clear that the conveyance of islands and parts of islands to make up the complement of 100 acres in each lot, and that whether the

islands were situated opposite to the lots to which they are annexed, or not, affords conclusive evidence that the principle of riparian ownership was not intended to apply to any of the parties under this patent. This is the view taken by the chancellor of the construction of this patent in *The Canal Appraisers* v. *The People,* (17 *Wend.* 600, 1,) and we think it is a reasonable one. It is true that the language employed in the description of lot 39, in the absence of any circumstances to control such an interpretation, affords *presumptive evidence* of an intention to extend the grant to the thread of the stream; but it is impossible to maintain, since the decision of the case of *Child* v. *Starr,* (4 *Hill,* 369,) that it is any more than *presumptive evidence* of such an intent. For the reasons already assigned we think that presumption is, in this case, overcome by unquestionable evidence of a different intent.

The facts in the case may raise a fair question as to possession, and the rights of the parties derived from that source. If any such question had been raised on the trial, it should have been submitted to the jury. We, however, are inclined to believe that the evidence of possession was not given with the view of raising a question of possession independently of that of *title.* No such object can be collected from the opening of the plaintiffs' counsel; and it is quite clear that the judge did not dispose of the case upon any such principle. His decision was obviously founded on the idea of a title derived under the principle of riparian ownership; for he held the plaintiffs entitled to recover *only* " *that part of the island which lies opposite to lot* 39." Whereas, had he disposed of the case upon a question of possession, he would have directed a recovery of the whole island.

There must be a new trial, costs to abide the event.